(86 South. 209)

**ALCAZAR AMUSEMENT CO. et al. v. MUDD & COLLEY AMUSEMENT CO.**
**(6 Div. 22.)**

(Supreme Court of Alabama. June 30, 1920.)

1. **Customs and usages** ⚖══18—**Allegations held to show usage as part of contract sued on.**

In suit to restrain the exhibition by respondents of a motion picture which plaintiff claimed to have the exclusive right to exhibit is a first run in the locality, allegations of the bill that a first-run exhibition of a film in a locality has a trade significance as the exclusive right to exhibit it for the first time in that locality are sufficient to ingraft upon the contract a trade usage giving that term the significance alleged.

2. **Contracts** ⚖══211—**Time not of essence unless made so expressly or by necessary implication.**

Time of performance is not of the essence of a contract unless it is expressly so made, or that intent must necessarily follow from the circumstances disclosed by the contract.

3. **Contracts** ⚖══211—**Time held not of essence of contract for first run of stated number of moving pictures.**

In a contract to release to an exhibitor during the year, beginning on a certain date, a stated number of moving picture films by named actresses for first-run exhibition, the time

set for the release was not of the essence of a contract.

**4. Contracts ⬤⚊217 — Cancellation by party held authorized only for reasons stated in contract.**

Where one section of a contract for release of motion picture films for first-run exhibition authorized either party to limit contract by notice to two more pictures, a later section reciting that the distributor was dependent upon the production of the described photoplays, which might be prevented by certain contingencies, and therefore reserved to the distributor the right to cancel the contract on ten days' notice, the latter could not cancel the contract under the latter section except for one of the contingencies stated.

**5. Injunction ⬤⚊110—Circuit court has jurisdiction to enjoin interference of third person with contract rights where remedy at law is inadequate.**

Under Code 1907, §§ 3052, 3055, giving the circuit court as a court of equity jurisdiction over all civil causes in which an adequate remedy is not provided in other tribunals, a suit to restrain a third party from exhibiting a motion picture film in violation of plaintiff's exclusive right to first exhibition thereof is within the court's jurisdiction.

**6. Injunction ⬤⚊110 — Territorial jurisdiction extends to interference with contract to deliver film outside of state.**

Though a contract giving plaintiff exclusive right to first exhibition of moving picture films provided for the delivery of the films at a point outside of the state, the circuit court has jurisdiction of a suit to restrain another exhibitor within the state from exhibiting a film in violation of the contract.

**7. Injunction ⬤⚊114(3)—Torts ⬤⚊12—Interference with contract is a tort which may be enjoined where remedy for damage is inadequate.**

A third party who knowingly interferes with the performance of a valid contract between others, or contributes to the impairment of the rights of a party thereto, commits a tort, and, if the remedy at law for such tort would be inadequate, the commission thereof may be enjoined, though specific performance of the contract could not be decreed.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill for injunction by the Mudd & Colley Amusement Company against the Alcazar Amusement Company and others. From a decree refusing to dissolve the temporary injunction, respondents appeal. Affirmed.

This is an appeal from a decree or order overruling a motion to dissolve an injunction issued pendente lite which was designed to prevent the appellant, a resident of this state, from exhibiting at its playhouse in Birmingham a moving picture called The Isle of Conquest, featuring Norma Talmadge, a screen star.

The appellee, Mudd & Colley Amusement Company, complainant in the trial court, operates a moving picture theater in the city of Birmingham, viz., the Trianon. The appellant Alcazar Amusement Company, respondent in the trial court, operates in the same city the moving picture theater called the Alcazar Theater; the other appellant, Marvin Wise, being the manager of the Alcazar. The appellee and the appellant corporations are exhibitors in the moving picture business. The Select Pictures Corporation, with a branch office at Atlanta, Ga., is a nonresident corporation, and its relation to the moving picture business is that of a distributor of pictures secured by it, through contracts, from producers of moving pictures.

The Select Pictures Corporation (a nonresident), though made a party to the cause, has not been served and does not appear.

The amended bill's averments proceed on the theory that, while the amusement company (complainant) had the right, license, or privilege, for an adequate consideration stated in the contract between it and the Select Pictures Corporation, to exhibit exclusively, and as "first run," in Birmingham the film The Isle of Conquest, featuring Norma Talmadge, yet the Alcazar Company, with knowledge of this existing contractual status, aided the Select Pictures Corporation "in its efforts to defeat complainant's rights" under its contract with the Select Pictures Corporation. A "first-run" exhibition of a film in a locality is averred, expressly and under recognized custom, to have the trade significance the phrase indicates, viz., the exclusive right to exhibit a film the first time in a locality, and that such right has a peculiar generally accepted value in the trade—a value not enjoyed on its second or subsequent exhibition in the same locality. It is further averred that the value of the license or privilege given by this contract has greatly increased since it was made. It is also averred that the remedy at law for the impending breach alleged is both impracticable and inadequate. There are features of the two writings, executed on the same day and involving the same general engagement, constituting one contract for present purposes, about which there is constructional controversy. These will be adverted to in the opinion to follow.

W. T. White, of Birmingham, for appellants.

Where pleading is susceptible of two constructions, it must be construed against the pleader. 174 Ala. 315, 56 South. 585. The Select Pictures Corporation is an essential and indispensable party. 83 Ala. 498, 3 South. 449, 3 Am. St. Rep. 758. It cannot be presumed that it will make itself a party voluntarily. 180 Ala. 296, 60 South. 858.

⬤⚊For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The bill shows a breach by complainant, and cannot invoke the aid of chancery. 171 Ala. 533, 54 South. 881; 167 Fed. 47, 92 C. C. A. 509. Section 9 seeks to inject new terms by verbal agreement, and this cannot be done. 197 Ala. 506, 73 South. 24; 166 Ala. 227, 51 South. 978; 119 Ala. 84, 24 South. 723. Section 11 shows that the contract is plain, unambiguous, and complete, and does not require interpretation by custom. 190 Ala. 634, 67 South. 424; 110 Ala. 143, 20 South. 67. There are no negative stipulations in the contract and the injunction should be dissolved. 199 Ala. 154, 74 South. 58; 171 Ill. 624, 49 N. E. 723, 40 L. R. A. 98; 4 Gill (Md.) 487, 45 Am. Dec. 171. Both parties knew of the uncertainty of performance, and the court will not decree specific performance. 124 Ala. 645, 27 South. 391; 158 Ala. 301, 48 South. 363; 9 Cyc. 600.

Black, Altman & Harris, of Birmingham, for appellee.

The court will seek to find the intention of the parties to the contract. 58 Ala. 640; 72 Ala. 262, 47 Am. Rep. 408; 53 South. 820; 7 Ala. App. 331, 61 South. 642; 13 C. J. 521; 191 Ala. 339, 67 South. 609. Several writings forming one transaction are construed as one contract. 5 Ala. App. 615, 56 South. 865; 59 South. 673; 198 Ala. 57, 73 South. 423; 13 C. J. 528. All the provisions of a contract should be given effect, if possible. 164 Ala. 368, 51 South. 17; 198 Ala. 57, 73 South. 423. A contract is construed most strongly against the party writing it, especially if they are printed forms. 13 C. J. 545; 188 Fed. 104, 110 C. C. A. 200; 150 N. C. 385, 64 S. E. 171. A known and recognized custom in the trade is considered in construing the contract made in reference thereto. 23 Ala. 420; 73 Ala. 396, 49 Am. Rep. 54; 75 Ala. 604, 51 Am. Rep. 489; 17 C. J. 492. This contract should be construed under the same principles governing contracts of insurance. 202 Ala. 384, 80 South. 466; 175 Ala. 357, 57 South. 852, Ann. Cas. 1914D, 377; 12 Ala. App. 518, 67 South. 758. A specified right of cancellation does not authorize a capricious cancellation. 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; 196 Mo. App. 694, 191 S. W. 1096; 13 C. J. 607. The complainants were entitled to injunctive relief.

McCLELLAN, J. [1-3] Under the averments of the amended bill and the attached contract (in two writings executed in the same connection), the Select Pictures Corporation invested the amusement company (complainant appellee) with the license or privilege of exhibiting exclusively and as "first run" the films within the contemplation of the contract. If the allegations in the bill otherwise in this respect were ignored, and if the contract included The Isle of Conquest, the averments are sufficient to ingraft upon as a part of the contract an established usage of trade significance, that justified the complainant's allegation that the contract invested it with the exclusive license or privilege of exhibiting the film as a "first run" for the six days prescribed in the instrument. German Ins. Co. v. Commercial Ins. Co., 95 Ala. 469, 474, 11 South. 117, 16 L. R. A. 291; 4 Michie's Dig. Ala. Rep. p. 608 et seq., noting earlier decisions of this court; 17 C. J. p. 492 et seq. In order to constitute time the essence of a contract, it must be expressly so made, or that intent must necessarily follow from the circumstances disclosed by the particular engagement. Fulenwider v. Rowan, 136 Ala. 287, 309, 34 South. 975. The writing designated Exhibit B in the pleading provided:

"First. The distributor agrees that it will, during the year commencing on or about the 1st day of September, 1918, release eight photoplays, in which the above-named star shall enact the leading rôle; and it hereby grants to the exhibitor the license to exhibit one copy of each of said photoplays, at the above-named theater only, for six successive days, and the exhibitor agrees to pay for such license the sum of $300 per picture, such payments to be made at least seven days before the date specified by notice to the exhibitor as hereinafter provided. Such license shall be specifically and solely for the exhibition of such photoplays at the above-named theater on the days specified in said notice to the exhibitor, and for no other purpose."

The writing (advanced payment contract) designated Exhibit A in the pleading provided:

"Whereas, the parties hereto propose to enter into certain contracts under the above date whereby the distributor will grant to the exhibitor the license to exhibit certain series of photoplays at the above theater upon certain days at stated prices; and, whereas, as part of the consideration for the approval and execution of such contracts by the distributor, the exhibitor has agreed to make an advance payment for photoplays deliverable under said contracts: Now, therefore, in consideration of the premises and of the execution by the distributor of the aforesaid contracts with the exhibitor, relating to the series of photoplays respectively known by the following star series titles, Clara Kimball Young series, Norma Talmadge series, Constance Talmadge series, Alice Brady series, the parties hereto do hereby mutually agree as follows: * * *

"Third. The exhibitor agrees to play, in the order of delivery for exhibition, at least two of said photoplays during each and every period of one month, commencing with the 1st day of September, 1918, and to play all of said photoplays on or before the expiration of one year from the date of exhibition of the first of said photoplays. * * * Either party hereto may, by notice by registered mail given to the other, limit said contracts to two additional photoplays of each series respectively, and upon the

delivery for exhibition of said additional photoplays said contracts will terminate with the same effect as, if said photoplays were the last of the series respectively deliverable thereunder."

While a period of time, viz., during the year commencing on or about the 1st day of September, 1918, was mentioned in the contract, the writings do not expressly stipulate that time was or should be of the essence of the engagement. It appears very clearly that the paramount intent of the parties was that eight films, starring Norma Talmadge, should be furnished (subject to other stipulations) for exhibition by appellee in Birmingham, six of which had been so furnished by the Select Pictures Corporation at the time (August 16, 1919) that corporation communicated to the appellee its purpose to terminate the contract. Unless excepted by the considerations to be stated, the film called The Isle of Conquest was one of the eight films of the Norma Talmadge series that the Select Pictures Corporation engaged to furnish for exhibition by the appellee; time, one year, not being of the essence of the contract and not operating to define a period beyond which the delivery of the eight films of the Norma Talmadge series should not be effected by the Select Pictures Corporation under the license or privilege assured the appellee by the two writings, Exhibits A and B to the amended bill.

[4] The fourth section of Exhibit A, so far as presently necessary, reads:

"Either party hereto may, by notice by registered mail given to, the other, limit said contracts to two additional photoplays of each series respectively, and upon the delivery for exhibition of said additional photoplays said contracts will terminate with the same effect as if said photoplays were the last of the series respectively deliverable thereunder."

There is nothing in the record to indicate that this stipulation of the contract was availed of by either party. On the other hand, the letter to be presently quoted in part excludes the idea that the stipulation just reproduced was invoked by the Select Pictures Corporation.

Section 8 of Exhibit B provided:

"Inasmuch as the distributor is dependent for its ability to perform this contract upon the production of the photoplays above described, which may be prevented by the illness, injury, incapacity, death, or default of the artists, directors, and other persons or corporations engaged in producing the same, and inasmuch as the performance of this agreement on the part of the distributor may be prevented or delayed for various reasons beyond its control, it is recognized by both parties that it is necessary for the distributor to reserve the right of canceling this agreement. It is therefore specifically agreed that the distributor may, upon ten days' notice to the exhibitor, cancel this agreement. In the event of such cancellation both

parties shall be relieved of all liability thereafter accruing hereunder."

In their letter of August 16, 1919, to the appellee (exhibitor), the Select Pictures Corporation wrote:

"Exercising the right vested in us by virtue of paragraph 8 in contract No. A–2006, made on the 26th day of July, 1918, entered into between Select Pictures Corporation, a corporation, herein called the distributor, party of the first part, and Mudd & Colley Amusement Company, as exhibitor operating the Trianon Theater, at Birmingham, Ala., herein called the exhibitor, party of the second part, witness, the Select Pictures Corporation, party of the first part, herewith terminates this agreement, effective on subject The Way of a Woman, by virtue of the following paragraph. * * *"

Paragraph 15 of the bill carries these averments with respect to this attempted termination of the contract:

"Petitioner further, shows that said letter was so received on said date, and that at said time there remained to be shown, under said contracts set forth as Exhibits A and B, two films or pictures starring Norma Talmadge, and that said letter did not attempt to limit said Select Pictures Corporation to further liability on said contract as provided therein, to wit, to terminate said contract after the said Select Pictures Corporation had supplied complainant with two additional photoplays, nor did it set forth any of the reasons provided in said contract by virtue of and under which the said Select Pictures Corporation was ostensibly given the right or privilege of cancellation thereof, nor did the said letter give to the said complainant ten days' notice of any cancellation of said agreement."

Section 8, quoted above, cannot be interpreted as clothing the pictures corporation with the absolute right to terminate the contract "upon ten days' notice to the exhibitor," with the consequence of releasing both parties thereunder. Had the parties entertained an intent to invest the pictures corporation with that absolute right, they would not have provided in section 4, quoted above from Exhibit A, that the contract might be terminated after the method and to the extent stipulated in section 4. The provisions of section 8 only clothed the pictures corporation with the right to terminate the contract for or on account of one or more causes defined in that section. None of these causes are asserted in the letter of August 16, 1919, as the ground on which a cancellation of the contract was rested. The notice prescribed therein a prerequisite to the effectual termination of the contract, does not appear to have been given. The contract was not therefore terminated, and still obliged the pictures corporation to furnish exclusively and as "first run" the film The Isle of Conquest as one of the eight of the Norma Talmadge series of photoplays.

[5] This brings us to the question whether the court below had jurisdiction of the cause

made by the amended bill, whereby injunction is sought to prevent a third party, a resident of Alabama, from enjoying the benefit, in Alabama, of a conscious aiding of a party to an existing contract to breach it. The now blended circuit court, exercising the authority of a court of equity, has the power and jurisdiction over "all civil causes in which a plain and adequate remedy is not provided in the other judicial tribunals." Code, § 3052, subd. 1, and section 3055. Under such authorization the court had jurisdiction of the subject-matter of this cause of complaint, the remedy at law, for the wrong asserted, not being adequate and complete. Code, § 3052, subd. 1.

[6] The contract between the appellee and the Select Pictures Corporation required the latter to deliver to the appellee the films within the contract's contemplation at its branch office in Atlanta, Ga., but the express design and provisions of this contract was that the appellee should exercise the license or privilege assured in Birmingham, Ala., at its Trianon Theater. The substance of this license or privilege was the right to exhibit exclusively and on "first run" the films at that place in Alabama. The prescribed delivery of the films outside of Alabama was but an act preliminary to the enjoyment of the license or privilege to exhibit in Alabama—an act in no sense comprehending the full right given the appellee. Any act of the pictures corporation directed to the prevention of appellee's enjoyment of the particular license or privilege given was, wherever occurring, a violation of appellee's rights under this contract.

[7] A third party who, with knowledge of the existence of a valid contract between others, interferes with its performance or consciously contributes to the impairment of the rights of a party thereto to avail of its obligations (especially wherefrom a selfish advantage or benefit may accrue to such third party), even though by means of a subsequent engagement between such third party and one of the contracting parties with respect to the subject-matter of the contract to which such third party is a stranger, commits a tort and is liable for the consummated wrong, independent of a right of action against the other party to the contract, if the remedy at law is adequate and complete, and the threatened or impending commission of such a tort may be enjoined by the party whose enjoyment of existing contractual rights are thus endangered; the application of the doctrine not being restricted to contracts for personal services. 4 Page on Contr. § 2426, and notes; Beekman v. Marsters, 195 Mass. 205, 80 N. E. 817, 11 L. R. A. (N. S.) 202, and note 122 Am. St. Rep. 232, 11 Ann. Cas. 332; Freeman's note to Philadelphia Ball Club v. Lajoie, 90 Am. St. Rep. 634-637; Gilligham v. Ray, 157 Mich. 488, 122 N. W. 111. The tortious wrong thus definitely threatened or consummated by

a stranger to the contract is, in a distinctive sense, independent of the contract, though arising from the relation it establishes and the obligations it imposes; and hence the party whose rights under the contract are thus threatened may be entitled to the injunctive relief indicated, notwithstanding specific performance of the contract cannot be compelled because of the nature of the contract, or of the impracticability of judicial superintendence of its performance, or of the absence of jurisdiction over the other contracting party. Freeman's note, 90 Am. St. Rep. 635, 636; the opinion in Singer Sewing Mach. Co. v. Union Buttonhole & Embroidery Co., Holmes 253, Fed. Cas. No. 12,904, there cited, presenting a forceful statement of the rule; N. Y. Phonograph Co. v. Jones (C. C.) 123 Fed. 197, 199, citing apt authorities; Texas Co. v. Central Co., 194 Fed. 1, 22, 114 C. C. A. 21.

The decision of this court in Iron Age Publishing Co. v. Western Union Tel. Co., 83 Ala. 498, 3 South. 449, 3 Am. St. Rep. 758—a pronouncement that referred the relief there sought to the government of the rules pertaining to the specific performance of contracts—is without application to the cause under consideration, and for these reasons: First, because the bill there alone invoked injunctive relief against a nonresident party to the contract who was not subject to the jurisdiction of the court, and not against a resident alleged to be a joint tort-feasor of the character averred in the present bill; second, because the contract there involved was held to be simply a contract for personal services (83 Ala. 505, 3 South. 449, 3 Am. St. Rep. 758), it not being averred that the contract was to be performed in Alabama. The declaration of the court in that decision, that the nonresident party to the contract was an indispensable party to the cause (aptly stated in the second headnote), was referable to the court's view that the relief there sought was in the nature of specific performance of a contract, and this pronouncement, set down in the second headnote, with respect to the necessity of making the nonresident a party respondent, was an inescapably logical consequence from the premise afforded by the conclusion that the nature of the relief sought cast it in the category of an effort to enforce specific performance of the contract; the party to be controlled in the premises disclosed by the bill not being subject to the jurisdiction of the court. No account was there taken of the doctrine to which the bill in the present cause appeals. The Iron Age Case, supra, is not therefore, an authority, one way or the other, on the question now under review.

The appeal of respondents in Montgomery Enterprises et al. v. Empire Theater Co., post, p. 566, 86 South. 880, involves the right to exhibit the same film. The Isle of Con-

quest, that was at the time of filing the bill being exhibited in the city of Montgomery in averred violation of the Empire Company's contract with the Select Pictures Corporation; thus distinguishing that cause from the one under consideration.

The application of the considerations stated to the questions made by the motion to dissolve or discharge the preliminary injunction on the ground that the bill is without equity leads to an affirmance of the conclusion prevailing below, viz., that the bill possesses equity, and hence justifies the retention of the temporary injunction.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes