**LOUISVILLE & NASHVILLE RAIL-
ROAD COMPANY, Appellant,**

v.

**J. M. BROWN, Jr., et al., Appellees.**

**No. 16632.**

United States Court of Appeals
Fifth Circuit.

Jan. 24, 1958.

**150**

White E. Gibson, Jr., James A. Simpson, Robert McD. Smith, Birmingham, Ala., Lange, Simpson, Robinson & Somerville, Gibson & Gibson, Birmingham, Ala., H. G. Breetz, Louisville, Ky., Reid B. Barnes, Birmingham, Ala., of counsel, for appellant.

R. Macey Taylor, Erle Pettus, Jr., Frank O. Burge, Jr., Birmingham, Ala., for appellees, Jackson, Rives, Pettus & Peterson, Birmingham, Ala., of counsel.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by the Louisville and Nashville Railroad Company from a judgment for the fourteen defendants, its employees, in a suit it had filed for damages resulting from their alleged fomenting of a strike that shut down for three days the plaintiff's railroad operations in Jefferson County, Alabama, (including the Birmingham yards.) Appellant railroad did not seek an injunction against the defendants. No labor organization is a party to the litigation. The alleged strike, if such it was, was charged in the complaint to be the result of the actions of the individual defendants acting alternatively singly or in concert, not authorized by any railroad brotherhood.

The complaint was in three counts. Each of them was short and to the point.[1]

---

[1]. For adequate consideration of the legal issues raised it is deemed necessary that the complaint be set out in full:

"Comes the plaintiff in the above styled cause and exhibits this its complaint in said action as follows:

"1. The plaintiff is a corporation organized and existing under the laws of the State of Kentucky and a resident citizen of said State. Plaintiff is engaged as a common carrier by rail of Interstate Commerce and of the United States mail in and through the Northern District of Alabama in which district it does business by Agent. The defendants are each over the age of 21 years and are resident citizens of Jefferson County, Alabama.

"The amount in controversy exceeds, exclusive of interest and costs, the sum of $3,000.00 and the jurisdiction of this Court is rested upon diversity of citizenship and the amount in controversy. Jurisdiction is further rested as an independent basis thereof upon the existence of a federal question being involved in the issues between the parties as herein averred.

"2. Plaintiff claims of the defendants, separately and severally, the sum of $250,000.00 damages and hereinafter sets forth in separate counts each of its causes of action as follows:

"Count One.

"3. Plaintiff avers that defendants are employees of the plaintiff and that there is imposed upon them and each of them by the provisions of 45 U.S.C. Sections 151, 152 et seq. the duty to exert every reasonable effort to settle all disputes between the plaintiff and its employees whether arising out of the

Count One asserts that defendants were employes and that as such they were charged by the provisions of the National Railway Labor Act, 45 U.S.C.A. §§ 151, 152 et seq. with the duty of exerting all reasonable effort to settle all disputes between themselves and their carrier employer in order to avoid interruptions of interstate commerce; that they breached this "statutory duty" in that they "wilfully and maliciously" caused a shutdown or work stoppage on appellant's lines in stated areas of Alabama to appellant's damage, amounting to $250,000.

Count Two alleged that defendants were parties to an agreement between their brotherhood and appellant covering their employment and that of all the members of the brotherhood, and that under its terms all grievances or disputes were to be settled through grievance procedures; that defendants conspired to, and in combination did, wil-

application of previously made agreements or otherwise, in order to avoid any interruption of interstate commerce or of the operation of the business of the plaintiff as a carrier of interstate commerce.

"4. Plaintiff further avers that the defendants, separately and severally, have on or about October 23, 1955, breached and utterly failed to discharge said statutory duty in that they wilfully refused to exert any effort to settle an existing dispute but did on the contrary on or about said date without cause and excuse and without notice to plaintiff, wilfully and maliciously cause a shut-down or work stoppage on the lines of the plaintiff in Jefferson County, Alabama, resulting in a complete paralysis of plaintiff's operation as a common carrier of interstate commerce in said county and surrounding areas and that as a proximate result thereof plaintiff has been injured in the amount of, to-wit, $250,000.00 for which plaintiff makes claim of the defendants herein.

"Count Two.

"5. Plaintiff avers that prior to October 23, 1955 it had entered into an agreement concerning wages, hours, working conditions and other matters relating to conditions of employment of certain of its employees among whom were these defendants with a labor organization of which the defendants were on said date and prior thereto members and that the defendants had knowledge of said agreement and the terms thereof. Plaintiff avers that according to the provisions of said agreement all grievances or disputes were to be settled in a specified manner consistent with the Railway Labor Act.

"And plaintiff further avers that on or about said date, the defendants conspired to and in combination did wilfully and maliciously cause or procure a breach of said agreement between plaintiff and the said labor organization in that they did on the occasion of a dispute or grievance within the scope of said agreement fail and refuse to follow specified procedure and did on the contrary render the same impossible in that they did without notice to plaintiff and without legal cause undertake to force plaintiff to yield and forego its right to have such dispute or grievance settled as provided in said agreement and instead to submit without arbitration or hearing to the arbitrary demands of the defendants and that in furtherance of said illegal and wrongful design they did wilfully and maliciously cause a shut-down or work stoppage on the lines of the plaintiff resulting in a complete paralysis of the operations of the plaintiff as a common carrier of interstate commerce in Jefferson County, Alabama, and that the plaintiff was damaged thereby as a proximate result thereof in the amount of $250,000.00 for which plaintiff herein claims damages.

"Count Three.

"6. Plaintiff avers that on, to-wit, October 23, 1955 it was engaged in the lawful business of a common carrier of interstate commerce operating in Jefferson County, Alabama where it had a right to be and that it was conducting its said operation in a lawful manner. Plaintiff further avers that on or about said date, the defendants did enter into a conspiracy or combination for the purpose of hindering, delaying and preventing the plaintiff from carrying on its lawful business as a common carrier of interstate commerce in that they did wilfully and maliciously and without excuse cause a shut-down or work stoppage of the plaintiff's railroad lines resulting in a complete paralysis of the operations of the plaintiff as a common carrier of interstate commerce in Jefferson County, Alabama, and as a proximate consequence thereof, plaintiff has been damaged in the amount of $250,000.00 for which it claims damages from the defendants."

fully and maliciously cause a breach of the agreement by refusing to follow the specified procedure on the occasion of a dispute or grievance, but rendered the agreed procedure impossible by undertaking to force appellant to yield to their demands and interfered with the contractual relations between appellant and its 2,500 employes by wilfully and maliciously causing a shutdown or work stoppage on appellant's railroad in Jefferson County, Alabama, to the same damage of appellant.

The Third Count, as finally construed by the Court, without relying on either the Federal Act or the employment agreement, simply alleged that defendant employes entered into a conspiracy in Jefferson County, Alabama, for the purpose of hindering and preventing plaintiff's interstate commerce carrier from carrying on its lawful business, and that they did so by wilfully, maliciously and without cause, forcing a shutdown of plaintiff's operations, damaging plaintiff in the sum of $250,000.

Defendants filed motions to dismiss each count for failure to state a claim on which relief could be granted, and on the ground that the District Court had no jurisdiction, by reason of the availability of an administrative remedy under the Railway Labor Act, supra. The court sustained these motions to the first two counts on the latter ground. It held Count Three "defective" and sustained the motion, allowing plaintiff the right to file an amendment to this count.

The amended Count Three,[2] on which trial to a jury was subsequently had, differed from the original only in that it charged that in causing the other employes not to perform their duties with plaintiff, defendants did so "by means of intimidation or threat of force or violence." As thus amended the count was permitted to stand.

On its appeal here the railroad company assigns as error the ruling of the trial court in dismissing the three original counts and thus "requiring" it to allege and prove threats, intimidation or violence to stay in court. It also assigned numerous other grounds relating to matters that arose on the trial.

There is one basic question underlying the entire case which must be resolved initially, and when it is disposed of some of the other troublesome questions are eliminated. The question, as we view it, is this:

Has the federal trial court, in a diversity case, jurisdiction of a suit for damages by a railroad company against its employes who foment and participate in a strike over individual grievances which are in process of adjustment under the statutory and contractual grievance procedures, but which grievances have not yet been submitted to the National Railway Adjustment Board, because the presubmission procedure, as called for in the Act and also by the employment contract, has not been completed?

The appellees concede that when a dispute between individual employes and a railroad of the nature here involv-

2. Amended Count Three follows:
"Comes the plaintiff in the above styled cause and amends its complaint by striking Count Three thereof and substituting therefor the following:
"Amended Count Three.
"Plaintiff avers that on, to-wit, October 23, 1955 it was engaged in a lawful business, to-wit, that of a common carrier by rail in interstate commerce, and that on or about said date the defendants, being employees of plaintiff, did conspire or combine to interfere with plaintiff's said business and pursuant to said conspiracy or combination did intentionally and without just cause interfere with and prevent plaintiff from carrying on said business in that they caused other employees of plaintiff, by means of intimidation or threat of force or violence, not to perform their duties with plaintiff and did thereby cause a substantially total cessation of plaintiff's operation in Jefferson, Morgan and Montgomery Counties and other places on its lines in the State of Alabama and as a proximate consequence thereof plaintiff was injured and damaged in the amount of $250,000.00 which plaintiff claims of defendants as damages in this cause."

ed—frequently known as "minor dispute"—has actually been submitted to the Adjustment Board, the railroad may enjoin a strike conducted by the brotherhood to vindicate such rights. This was the express holding by the Supreme Court in Brotherhood of Railroad Trainmen, etc. v. Chicago River & Indiana R. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.

Appellees contend that a strike to vindicate such rights may not be enjoined unless the jurisdiction of the Adjustment Board has already attached. In support of this limitation on the applicability of the principle of the Chicago River case they cite Manion v. Kansas City Terminal Transportation Co., 353 U.S. 927, 77 S.Ct. 706, 1 L.Ed.2d 722.

The case we have to decide does not fall squarely into the pattern of either of these cases. We conclude that in all essential characteristics, and in logic it much more nearly resembles Chicago River than Manion. The court in the former case called attention to the purpose of the National Railway Labor Act, using the following language:

> "This record [referring to the legislative history of the Act] is convincing that there was general understanding between both the supporters and the opponents of the 1934 amendment that the provisions dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field. Our reading of the Act is therefore confirmed, not rebutted, by the legislative history." Brotherhood of Railroad Trainmen etc. v. Chicago River & Indiana Ry. Co., 353 U.S. 30, 77 S.Ct. 635, 640.

The court found that it would completely frustrate the jurisdiction and authority of the board, to which either party is entitled to take a dispute, if the economic pressure of a strike could be brought to bear to compel a favorable decision while the matter was pending for decision before the board. Here there was no issue pending before the board, because the issue was not ripe for presentation to it. The statute *requires* that disputes be processed by normal grievance procedures,[3] but if no agreement is reached, then either party may refer the dispute to the Adjustment Board.

Obviously the statutory right of either party to refer the dispute to the board would be as effectively frustrated by self-help by one of the parties in the pre-submission stage of the negotiations as it would by strike action after a submission of the issues to the board as in the Chicago River case. The harmful effects would be even more pronounced, for if a strike were permitted before or during negotiations of the grievance which are *required* by the Act, there need be no waiting period at all. It is not believed that the Supreme Court would make illegal a strike commenced after grievance procedure had been completed and appealed to the board in accordance with the statutory provisions, in order to preserve the jurisdiction of the board, but would hold that a strike would be legal if it occurred before the first step had been taken, or, as here, before the first step had been completed. A strike at either stage would effectively nullify the provisions of the Act that guarantee to *either* party an assurance of a board hearing.

---

3. "(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."
45 U.S.C.A. Sec. 153, First (i).

What we have said here does not run counter to the Court's per curiam disposition of the Manion case [353 U.S. 927, 77 S.Ct. 706]. There the state court had granted an injunction to prevent a strike *after* the grievance procedures had been completed and after more than six months had elapsed, during which time *either* party to the dispute could have referred the matter to the Board. The court reversed the judgment of the state court of appeals affirming the grant of the injunction, "because the dispute here is not pending before the National Railroad Adjustment Board," but in remanding the cause the court did so "without prejudice to the power of the Court of Appeals *to reinstate* its judgment if the dispute is submitted to the Adjustment Board by either party within a reasonable time." (Emphasis added.)

In the case before us neither party *could* submit the dispute to the Adjustment Board at the time of the alleged strike; thus there was no way in which the appellant here could protect its right to a board Adjudication. In Manion all the railroad company had to do on remand, in order to be entitled to a renewal of the injunction, was to submit the dispute to the Board, because all presubmission proceedings had been completed. Here the dispute was only a few days old when the work stoppage occurred and neither party could go to the board. We think that in that posture of affairs the principle of Chicago River would apply, and that had an injunction been sought because the strike was illegal, it would lie to prevent the frustration of the statutory grievance-adjustment procedure.

As we have noted, the trial court dismissed the first two counts of the complaint for want of jurisdiction, because, as the court said, the exclusive remedy available to the appellant (to redress the wrongs resulting from the work stoppage) was, under the Railway Labor Act, by submission to the Adjustment Board. The trial court in thus deciding must have accepted the thesis that the work stoppage itself was a dispute which must first go through the grievance procedures and then be submitted to the adjustment board. That this view of the matter is not the law is the clear teaching of the Supreme Court's decisions in both the Chicago River and Manion cases. The court did not there hold that the lower courts did not have jurisdiction over the suits for injunction because of a failure to take the issue of legality of the strike to the board. On the contrary, it affirmed the judgment, granting an injunction in the one, and reversed for a different reason in the other, significantly stating in its mandate that the state court might reinstate its injunction if either party to the "minor disputes" submitted those claims to the Board for decision. Nothing is said by the court that the "dispute" as to the legality of the work stoppage must itself be submitted to the Board rather than to the court in the first instance.

We therefore conclude that the Supreme Court has established the principle that a state or federal court has jurisdiction to adjudicate a complaint that employes are fomenting a strike before or during the orderly processing of minor grievances through the normal grievance machinery or the subsequent procedures before the adjustment board. The appellees lay much strees on Slocum v. Delaware, L. & N. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, as depriving the courts of jurisdiction of this "dispute" between the railroad and its employes—the "dispute" being the claim that the work stoppage was illegally caused by the appellees to the damage of appellant. We do not think this is such a "dispute * * * growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * *" as are required under the Act, and therefore by the Slocum decision, to be processed up to and through the Adjustment Board. This is the effect of the two decisions of the Supreme Court already discussed. Otherwise it would have held in both of them that the state trial courts had no jurisdiction to

entertain the injunction suits. For a holding in all respects similar to our conclusion see Norfolk & Portsmouth Belt Line R. Co. v. Brotherhood of Railroad Trainmen, 4 Cir., 248 F.2d 34.

We hold that the trial court erred in holding that it lacked jurisdiction to consider the first two counts on their merits.

We next apply the above conclusion as to the power of the district court to entertain such a suit to the allegations of the complaint. Appellant urges the view that Count One set out a cause of action because such a cause of action was created by the Railway Labor Act itself. The count asserts that it was the duty of defendant employes under the law to exert all reasonable effort to settle all disputes between themselves and the railroad, but that they breached this "statutory duty" by causing the work stoppage rather than relying on the grievance procedure. The only language of the Act that spells out this statutory duty is found in 45 U.S.C.A. § 152, as follows:

> "First. It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreement or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."

The Supreme Court has held that a major purpose of this Act was to provide a machinery for settling railway labor disputes in a manner that would prevent or minimize strikes. Texas & N. O. R. Co. v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. That this was a purpose of the Act is not disputed. However, it does not follow that Congress has, by this announcement of policy, even though stated in the terms of "duty," intended to or succeeded in setting up a statutory right of action for damages for a breach of this duty. Where Congress sought to set up a right of action for damages for breach of duty in other management labor situations, it enacted a statute expressly spelling out the nature of the right of action. See 29 U.S.C.A. § 187, and so also in creating a right of action in the civil rights field. 42 U.S.C.A. §§ 1983, 1985, 1986. We do not think that Congress here intended to or did create a new statutory right of action for damages of the nature declared upon by the plaintiff in Count One.

Count Two is essentially an action for wrongful interference with the contractual rights of others. The trial court did not consider this count on the merits, but held that the asserted wrong was one which it had no jurisdiction to adjudicate. Whether such a cause of action is adequately alleged and is cognizable in the courts of Alabama, see Alcazar Amusement Co. v. Mudd and Colly Amusement Co., 204 Ala. 509, 86 So. 209, should first be determined by the trial court after adequate argument by the parties. The appellees do not discuss this issue in their brief, being content to rely on the want of jurisdiction of the court to entertain the claim. Having held that the court has jurisdiction, we now let the district court pass first on the sufficiency of the pleading to assert a claim on the remand.

The trial court dismissed Count Three as originally drawn, apparently on the theory that its ruling as to the exclusive jurisdiction of the Adjustment Board over the strike issue should control where there was only a simple allegation that the alleged strike was illegal solely because it contravened the policy of the Railway Labor Act or it interfered with contractual rights entered into pursuant to that act, or was a wrongful interference with appellant's business, but it would not be applicable if appellants alleged a concerted course of action involving threats or intimida-

tion or force or violence. The court thus dismissed Count Three also, because it was "defective," apparently on the theory, not spelled out, that an interference with appellant's business was justified if it arose out of a labor dispute, this being simply a common law cause of action existing, if at all, under the Alabama law. By subsequently permitting the amended Count Three to stand it is apparent that the court held that such justification exists in Alabama only in the absence of violence, threats or intimidation. Cf. United Construction Workers, etc. v. Laburnum Construction Corp., 347 U.S. 656, 74 S. Ct. 833, 98 L.Ed. 1025. Here too the district court did not pass on the question whether, correctly applying the rule of the Chicago River case, the original count set forth a claim on which relief could be granted. The parties fully argued this point in their briefs and we think it proper for us to decide it. In the light of the fact that it is the clear duty of the Alabama courts to give effect to those decisions in determining whether the normally existing right of labor freely to strike justifies the alleged illegal conduct here, we hold that Count Three, as originally pleaded does set out a claim on which relief could be granted. The principle set down in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810, that such right exists unless surrendered by contract, must be read to mean that the right can either be voluntarily surrendered by contract or, as we have held was the situation in this case, may be taken away by statute. The Alabama Supreme Court recognized possible limitations on the lawfulness of a strike by legislative action of the nature of requiring "a waiting period" in Hotel & Restaurant Employees, etc. v. Greenwood, 249 Ala. 265, 30 So.2d 696, 703. This case also makes it clear that if the strike is not for a "lawful" objective

this would be an exception to the generality of the rule that a strike is justifiable in Alabama. As we have heretofore indicated, the alleged strike here would not under the circumstances charged be one for a lawful objective, because it would be for the purpose of frustrating the grievance adjustment procedure which Congress set up for the orderly settling of railway labor disputes. Hence we conclude that the trial court erred in dismissing Count Three of the complaint in default of allegations of threats or intimidation by force or violence in the conduct of the work stoppage. A wilful interference with appellant's business without the justification normally flowing from a lawful strike is actionable and warrants a judgment for damages in Alabama. Russell v. International Union, 264 Ala. 456, 88 So.2d 175, certiorari granted 352 U.S. 915, 77 S.Ct. 213, 1 L.Ed.2d 121.[4]

Appellant assigns error to numerous charges given by the trial court under the erroneous view of the court that no cause of action could be maintained by plaintiff unless it could allege and prove violence, threats or intimidation. The court charged, in the language of Section 6 of the Norris-LaGuardia Act (29 U.S.C.A. § 106) that:

"No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful act of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts as to actual knowledge thereof."

Furthermore, the court charged with respect to each separate defendant:

"23. If you are reasonably satisfied from all of the evidence in the

---

4. It appears that the holding of the Alabama court is consistent with the Supreme Court decision of United Construction Workers, etc. v. Laburnum Construction Corp., supra, in permitting a recovery of damages in an illegally conducted strike; however, it is to be noted that certiorari has been granted in the cited case.

case that defendant, J. M. Brown, Jr., at the time alleged in plaintiff's amended complaint was a member of an association or organization participating or interested in a labor dispute involving a work stoppage of plaintiff's employees, then I charge you that you cannot find in favor of plaintiff and against such defendant unless you are reasonably satisfied from all of the evidence in the case that such defendant actually participated in causing other employees of plaintiff by means of intimidation or threats of force or violence not to perform their duties with plaintiff, or actually authorized another person to cause other employees of plaintiff by means of intimidation or threats of force or violence not to perform their duties with plaintiff, or ratified the act of another person who caused other employees of plaintiff by means of intimidation or threats of force or violence not to perform their duties with plaintiff after actual knowledge thereof."

and also charged with respect to each defendant:

"26. Gentlemen of the jury, I charge you that you cannot find for the plaintiff and against J. M. Brown, Jr., unless you are reasonably satisfied from all the evidence in the case that such defendant actually participated in causing other employees of plaintiff, by means of intimidation or threats of force or violence, not to perform their duties with plaintiff, or actually authorized another person to cause other employees of plaintiff, by means of intimidation or threats of force or violence, not to perform their duties with plaintiff, or ratified the act of another who caused other employees of plaintiff, by means of intimidation or threats of force or violence, not to perform their duties with plaintiff after actual knowledge thereof."

The effect of this last charge was to instruct the jury that the several de-

fendants were members of an association or organization participating or interested in a labor dispute, and thus nullified the previous charge, and, contrary to all the evidence of the case instructed the jury, as a matter of law, that some union was participating or interested in the dispute. The testimony was undisputed that no brotherhood was in any way a participant in the work stoppage or interested in it in the sense that it had anything to do with it. Appellants contend that the Norris-LaGuardia Act is inapplicable in a strike fomented by individuals acting in concert or conspiracy as alleged here, and not participated in at all by the union. Having found that the alleged strike would be illegal if the allegations of the original count three are established, it may not be necessary for us to pass on this contention, since it would not be necessary for appellant to allege or prove the alleged illegal acts of threat or intimidation of force or violence; however, since the trial court may have felt that Section 6 applied also to the act of conducting an illegal strike, it may be appropriate for us to consider this contention as well.

█ We think that the protection of Section 6 of the Norris-LaGuardia Act is not extended to individuals who engage in an illegal strike in which a labor organization of which they are members is not interested. We think there is nothing in United Brotherhood of Carpenters, etc. v. United States, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973, to the contrary, for there the individuals as to whom the Supreme Court held the protection was available were members of the Brotherhood which was a participant in the alleged conspiracy. The same is true in National Labor Relations Board v. Marshall Car Wheel & F. Co., 5 Cir., 218 F.2d 409, decided by this court. See also Bianchi v. United States, 8 Cir., 219 F.2d 182, and Callanan v. United States, 8 Cir., 223 F.2d 171. We hold that if 14 different employees, of whom 13 are members of a large brotherhood and the fourteenth is a member of another, neither of which is in any way involved in the strike, engage in an

illegal strike by such joint action as would make them liable under the common law of conspiracy, their responsibility for the acts of each other in furtherance of such conspiracy is determined without benefit of Section 6 of the Norris-LaGuardia Act.

Appellant complains that the trial court erred in not directing a verdict against all of the defendants. Even under the simpler theory of recovery which we find the trial court should have applied, there was nevertheless a steadfast denial by the defendants that they caused the walkout. This presented a jury issue, and we cannot say that the trial court should have directed a verdict against any of them.

The assignments of error for failure of the trial court to grant the motion for new trial as amended need not be passed on, because it becomes necessary that the case be remanded for new trial for the reasons we have already stated.

Reversed and remanded for further proceedings not inconsistent with this opinion.