**BROTHERHOOD OF RAILROAD TRAINMEN and R. E. Carroll, Appellants,**

v.

**DENVER AND RIO GRANDE WEST-ERN RAILROAD COMPANY, Appellee.**

No. 8196.

United States Court of Appeals Tenth Circuit.

Sept. 21, 1966.

Rehearing Denied Oct. 24, 1966.

Certiorari Granted Jan. 9, 1967. See 87 S.Ct. 719.

James L. Highsaw, Jr., Washington, D. C. (Philip Hornbein, Jr., Hornbein & Hornbein, Denver, Colo., and Mulholland, Hickey & Lyman, Toledo, Ohio, on the brief), for appellants.

Martin Lucente, Chicago, Ill. (Ernest Porter, Kenneth D. Barrows, Jr., Denver, Colo., Walter J. Cummings, Jr., Richard H. Compere, and Sidley, Austin, Burgess & Smith, Chicago, Ill., on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

Seeking damages alleged to have resulted from an unlawful strike, the Denver & Rio Grande Western Railroad Company, a Delaware corporation with its principal place of business in Denver, Colorado, brought this tort action against the Brotherhood of Railroad Trainmen,[1] the chairman of the Brotherhood of Rail-

---

1. The Brotherhood was the duly certified representative under the Railway Labor Act of certain employees of the Rio Grande, and at all times during this controversy there was in effect a collective bargaining agreement.

road Trainmen locals in Colorado, and R. E. Carroll, representing the Brotherhood on the Rio Grande as Chairman of the General Grievance Committee. The trial court overruled the Brotherhood's motion to dismiss, which included an allegation that venue of the action did not lie in the United States District Court for the District of Colorado. Following a trial, the local chairmen were dismissed from the action, and judgment in the sum of $37,983.37 was entered against the Brotherhood and Carroll. This appeal followed.

The National Railroad Adjustment Board made two awards for the payment of money to the Brotherhood, which the Railroad refused to pay. On May 16, 1960, at 2:00 P.M., a strike was called on the property of the Rio Grande for the purpose of compelling payment of the awards. At about 6:30 P.M. on the same day, a temporary restraining order enjoining continuance of the strike was served upon Carroll. A few hours later the strike was discontinued over the entire system and never renewed. Thereafter, holding the strike to be illegal, the district court issued a preliminary injunction which became permanent on July 27, 1960. (185 F.Supp. 369, aff'd 294 F.2d 266). Meanwhile, believing that a strike threat still existed, several shippers, principally Ford and its suppliers, between May 19th and June 1, 1960, diverted freight shipments from Rio Grande lines. It is for the loss of revenue caused by these diversions that the district court allowed recovery.

■■ At the outset, we are confronted with the contention that venue of the action does not lie in the United States District Court for the District of Colorado. The venue statute, 28 U.S.C. § 1391(b), states:

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, except as otherwise provided by law."

Venue here depends upon whether the Brotherhood is held to reside within the judicial district of Colorado, or in Cleveland, Ohio, where its headquarters and principal place of business is located. Section 1391(c) provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Relying upon Rutland Ry. Corp. v. Brotherhood of Locomotive Engineers, 2 Cir., 307 F.2d 21, and like authorities holding that incorporated associations, including unincorporated national labor unions, should be treated as corporations,[2] the district court upheld venue. Subsequent to the entry of judgment, the Supreme Court, in United Steelworkers of America v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217, while recognizing the validity of the reasoning in cases like Rutland, held that an unincorporated labor union was not yet in the same category as a corporation, and that if such unions were to be treated as corporations, the change should be made by Congress and not by judicial determination. Although the court in the Bouligny case was discussing the diversity statute, the holding was clearly to the effect that unincorporated associations were basically different from corporations. It was a rejection of the principle espoused by the Rutland case, upon which the Rio Grande relies to sustain venue. For venue purposes, the Brotherhood is not a resident of Colorado as required by § 1391(b), and consequently, the complaint must be dismissed.

2. The rule is stated in the Rutland case as follows:
"Since the residence of a corporation for venue purposes has been expanded to include all the judicial districts in which the corporation is doing business, the residence of an unincorporated association for venue purposes should likewise be expanded to include all the judicial districts in which the unincorporated entity is doing business."

■ The Railroad suggests that even if venue did not exist as to the Brotherhood, the proper procedure would be to drop it from the case and let the judgment stand against Carroll, a Colorado resident. Carroll was Chairman of the General Grievance Committee on the Rio Grande; he was not an officer of the union. So far as the record shows, Carroll's role in connection with the strike was limited to sending the Railroad notice of the Brotherhood's strike decision and thereafter advising the local unions of the issuance of the restraining order. Carroll had no more to do with causing the strike than did the chairmen of the locals, and accordingly, he too should have been dismissed from the action.[3]

Reversed.

---

3. The trial court found only that Carroll was "General Chairman of the General Grievance Committee of the Brotherhood on the property of the plaintiff" and that he notified the local groups to call off the strike after service of the temporary restraining order.