**NATIONAL AIRLINES, INC., Plaintiff,**

v.

**AIRLINE PILOTS ASSOCIATION IN-TERNATIONAL et al., Defendants.**

No. 75–2805–Civ–CA.

United States District Court,
S. D. Florida.

Sept. 30, 1976.

Steel Hector & Davis, Miami, Fla., Poletti Freidin Prashker Feldman & Gartner, New York City, for plaintiff.

Manners & Amoon, Miami, Fla., for Air Line Pilots Asso. International Assoc. of Flight Attendants.

Milledge, Horn & Hermelle, Miami, Fla., for the individual defendants.

## ORDER OF DISMISSAL

ATKINS, District Judge.

Plaintiff's action against the defendants is hereby dismissed with prejudice.

On December 19, 1975, this Court granted plaintiff its request for a preliminary injunction. The Court then was of the opinion that a breach of a Section 2 First duty of the Railway Labor Act (RLA) gives rise to preliminary, injunctive relief. Since the Court found that such a breach did occur, the injunction issued and a settlement was eventually reached.

### I. The Claim for Damages

■ Unsatisfied with the injunctive relief and the favorable results therefrom, the plaintiff urges the view that a breach of the Section 2 First duty gives rise to a plenary right of action for compensatory damages.

This position, however, is contrary to the existing law regarding the permissible scope of Section 2 First remedies. All the cases cited by plaintiff confine the Section 2 First remedies to those partaking of the nature of equitable, injunctive relief. In fact, the Fifth Circuit Court of Appeals has unequivocally defined the remedial parameters issuing from a breach of the § 152 First duty; namely:

The Supreme Court has held that a major purpose of [the Railway Labor] Act was to provide a machinery for settling railway labor disputes in a manner that would prevent or minimize strikes. . . that this was a purpose of the Act is not disputed. However, it does not follow that Congress has, by this announcement of policy, even though stated in the terms of "duty" intended to or succeeded in setting up a statutory right of action for damages for breach of this duty. Where Congress sought to set up a right of action for damages for breach of duty in other management labor situations, it enacted a statute expressly spelling out the nature of the right of action. See 29 U.S.C.A. § 187, and so also in creating a right of action in the civil rights field. 42 U.S.C.A. §§ 1983, 1985, 1986. We do not think that Congress here intended to or did create a new statutory right of action for damages of the nature declared upon by the plaintiff in Count One.

*Louisville and Nashville Railroad Co. v. Brown,* 252 F.2d 149, 155 (5th Cir. 1958), *cert. denied,* 356 U.S. 949, 78 S.Ct. 913, 2 L.Ed.2d 843 (1959).

Since the *Brown* decision, there have been no reported cases on this question, nor has Congress enacted legislation which even suggests its intent to create a right of action for damages.

In addition to the fundamental principles of *stare decisis,* the Court is of the opinion that policy considerations underlying the *Brown* decision are as tenable today as when *Brown* was decided. The life cycle of labor-management bargaining is heated and oftentimes results in bitter accusations. Representatives attempt to secure the best possible terms for their respective sides. To create a right of action in favor of an employer against a union and its collective bargaining representatives for losses the former incurs in the course of the collective bargaining process would, in effect, give the employer a weapon with which to keep the unions and their agents "in line." Surely, neither Congress nor the Appellate Courts would fashion a remedy which would give the employer a lever upon which to gain such an unfair advantage.

Accordingly, since the Court is satisfied "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to [monetary] relief", *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), Count 3 of the complaint is dismissed with prejudice.

*See* Federal Rule of Civil Procedure 12(b)(6).

## II. *The Claim for the Permanent Injunction*

In addition to the preliminary injunction *pendente lite,* the plaintiff further appeals to the Court's equity jurisdiction in its request for a permanent injunction against the defendants.

If there is any justification for this request, it does not appear in the record. It seems, then, that underlying this claim is either an irrational, unfounded fear of harm for the defendants, or an unmitigated desire for vengeance. In either situation the Court is without authority to grant relief. Surely the defendant unions (ALA and ALPA) can no longer harm the plaintiff for they were ousted as collective bargaining representatives in the previous election. Certainly, the individual defendants, four stewardesses, can no longer inflict real or potential damage on the carrier; they have since then been stripped of all the authority formerly vested in them by defendants ALA and ALPA.

The Supreme Court has stated the general rule that:

> The District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.

*Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1969), *citing Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 225, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962).

Thus, for the issuance of a preliminary injunction *pendente lite*—much less the more drastic remedy of a permanent injunction—"[t]here must be a likelihood that that irreparable harm will occur. Speculative injury is not sufficient; there must be more than unfounded fear on the part of the applicant." *Wright and Miller, Federal Practice and Procedure* 436–37. Furthermore, an invocation to the Court's equity jurisdiction carries with it the burden of showing an actual threat of harm. *Id.* The Court simply will not "permanently enjoin" a person for breaching a legal obligation that is imposed upon all persons similarly situated and that is neither presently being breached nor likely to be breached in the future. If the rule were otherwise, courts exercising their potent equitable powers would be called upon to permanently enjoin individuals breaching other duties imposed by law.

> The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or common law.

*Holiday Inns of America, Inc. v. B & B Corp.,* 409 F.2d 614, 618 (3d Cir. 1969).

The Court therefore concludes that the plaintiff will be able to secure adequate relief by seeking an injunction *pendente lite* in the unlikely event that the defendants breach, or threaten to breach, their § 2 First duty. Accordingly, Count 2 of the complaint is dismissed.

## III. *The State Claim*

This Court has pendant jurisdiction over the state claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965). The state claim for breach of contract, however, is preempted by federal law. In *Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1968) the Supreme Court held that state remedies are pre-empted by federal substantive law in actions brought under § 2 First of the RLA. Since we have held that there is no federal remedy for damage under the instant facts, then a state remedy for damages for breach of contract is necessarily pre-empted.

56

Accordingly, plaintiff has failed to state a set of facts which, if proved, would entitle it to relief under state law. Therefore, this Count is dismissed.

The complaint is therefore dismissed in its entirety pursuant to Rule 12(b)(6).

DONE AND ORDERED at Miami, Florida, this 29th day of September, 1976.