**UNITED TRANSPORTATION UNION, Plaintiff,**

v.

**SPRINGFIELD TERMINAL COMPANY, Defendant.**

**Civ. No. 87–0342–P.**

United States District Court, D. Maine.

Dec. 28, 1987.

Craig Rancourt, Biddeford, Me., for plaintiff.

Charles S. Einsiedler, Jr., Portland, Me., for defendant.

## ORDER DENYING PRELIMINARY INJUNCTIVE RELIEF

GENE CARTER, District Judge.

In this action Plaintiff seeks declaratory and preliminary and permanent injunctive relief under the Federal Railroad Safety Act (FRSA), 45 U.S.C. § 421, *et seq.*, and the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq.* On November 12, 1987, Plaintiff's members withdrew from service on carrier Defendant's lines. Plaintiff asserts that the reason for the work stoppage was hazardous conditions existing on Defendant's railroads. Defendant asserts that the withdrawal from service concerns work issues other than safety and has established a policy that Plaintiff's members' actions will be treated as a mass resignation and that any workers wishing to return to work will only be hired as new employees at entry level rates of pay. Plaintiff seeks a declaration that Defendant's actions (1) violate its members' right to refuse to work in the presence of hazardous conditions under the FRSA; and (2) unilaterally vary rates of pay, rules and working conditions in violation of the Railway Labor Act. Plaintiff seeks injunctive relief consistent with the declaratory judgment sought.

As Defendant notes, the standards for obtaining preliminary injunctive relief in this Court are well established. A moving party must show:

(1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which the granting of injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Stanton by Stanton v. Brunswick School Department,* 577 F.Supp. 1560, 1567 (D.Me.1984) (quoting *UV Industries, Inc. v. Posner,* 466 F.Supp. 1251, 1255 (D.Me. 1979)). Plaintiff has not demonstrated a likelihood of success on the merits, so the motion must be denied. *Maine Central Railroad v. Brotherhood of Maintenance of Way Employees,* 652 F.Supp. 40, 42 (D.Me.1986).

### Discussion

The Court of Appeals for the First Circuit, in *Boston and Maine Corp. v. Lenfest,* 799 F.2d 795 (1st Cir.1986), clearly defined the Court's role in cases brought under the FRSA:

Section 10(c) of the FRSA states plainly that "*[a]ny* dispute, grievance, or claim arising under this section *shall be* subject to resolution in accordance with the procedures set forth in section 153 of this title." 45 U.S.C. § 441(c) (emphasis added). It does not state "any valid dispute," or "any dispute for which the conditions of this section are met." Section 3 (45 U.S.C. § 153) provides for the settlement of railroad labor disputes by the National Railroad Adjustment Board. The House Report that accompanied the FRSA is clear, "[t]he Committee intends this to be the exclusive means for enforcing this section." H.R.Rep. No. 1025, 1980 U.S.Code Cong. & Ad.News at 3841. If the applicability of Section 10 of the FRSA depended on the findings of fact made by a district court, this would render the § 10(c) requirement meaningless. The Board would have to follow the district court's findings of fact and could do nothing but determine a remedy. Such a bifurcated resolution of disputes over hazardous working conditions would vitiate a provision designed to provide speedy and final nonjudicial resolution. Accordingly, we find that the district court was without jurisdiction to make findings of fact in this case as to the adequacy of notice given to the B & M. This entire dispute, including the nature of the hazard faced, whether the Committee complied with the statutory requirements of notice, and the retaliatory actions of the B & M in firing the leaders of the work stoppage and disciplining others, must be submitted to the National Railroad Adjustment Board under 45 U.S.C. § 153.

As *Lenfest* makes clear, the declaratory relief sought by Plaintiff—that Defendant's actions violate Plaintiff's members' rights under the FRSA—is entirely dependent on factfinding that has been statutorily entrusted to another body, the National Railroad Adjustment Board. Although Plaintiff also seeks a declaration that Defendant's actions violate the RLA, that determination, too, is bound up in how this factual dispute will ultimately be characterized and resolved. For this Court to conduct a parallel proceeding would frustrate Congress's express intent that disputes arising under the FRSA be resolved by the National Railroad Adjustment Board. *Lenfest*, 799 F.2d at 800.

Plaintiff asserts that an injunction is necessary to preserve the efficacy of the mandated arbitration procedures. The Court in *Lenfest* approved the granting of an injunction, stating:

> [W]hen a railroad's entire work force exercises its rights under § 10 to refuse to work under hazardous conditions, the work stoppage takes on the character of a contest of economic power, and the availability of arbitration procedures to mediate the dispute may be effectively nullified by the economic and social pressures brought to bear.... As the Supreme Court has said,
>
> > [r]elegating safety disputes to the arena of economic combat offers no greater assurance that the ultimate resolution will ensure employee safety. Indeed, the safety of the workshop would then depend on the relative economic strength of the parties rather than on an informed and impartial assessment of the facts.
>
> ....

*Lenfest*, 799 F.2d at 802–03.

Although the Court of Appeals found that the availability of injunctive relief was necessary to ensure the effective operation of the FRSA, *id.*, this Court does not find issuance of an injunction appropriate in this case. This case is in a very different posture from *Lenfest*, where the injunction was requested by the carrier, who was "in a precarious financial condition and claim[ed] it would quickly become insolvent if a total work stoppage were to continue." *Id.* Here the union, having called a work stoppage, seeks to be put back to work with mandatory minimum safety practices imposed on the railroad.

After initiation of the work stoppage and during the pendency of this case, the Federal Railroad Administration (FRA), at the union's behest, "conducted more than 300 on-site inspections to assess charges and countercharges regarding safety on the Springfield Terminal Railroad." FRA Report. These inspections specifically addressed many of the issues raised in Plaintiff's request for an injunction (*e.g.*, defective engines, engineer training). The report issued by the FRA detailed the resolution of the problems found, including the carrier's agreement to implement a program insuring that only qualified engineers operate the trains and the exclusion from service of defective engines until they are repaired. Given the fact that the safety problems asserted by the union have been and are now being addressed by the FRA, the Court sees no need for an injunction ordering the carriers to observe minimum safety standards. In *Lenfest*, the Court found an injunction necessary despite evidence that the asserted safety hazard had been corrected because without one the railroad would be free to reinstitute its former practices. Here, however, a federal agency, with specific expertise and statutory authority in this area, has intervened, and there is no reason, on the record before it, for the Court to find that agency's resolution of the safety problems insufficient to keep them from recurring in the manner anticipated in *Lenfest*. The Court does not find, therefore, that the Plaintiff's members will suffer irreparable harm from safety hazards without the requested injunctive relief.

The Court is persuaded, too, that no irreparable injury will occur if the injunction concerning rates of pay of returning workers is not granted. If, after appropriate factfinding, the National Railroad Adjustment Board determines that the railroad's recategorization of and pay reduc-

tion for returning workers constitutes retaliation under the FRSA, it has the power to award backpay to the aggrieved employees and order them reinstated to their positions. 45 U.S.C. § 441(c)(2).

Accordingly, Plaintiff's motion for preliminary injunctive relief is hereby DENIED.

So ORDERED.