**UNITED TRANSPORTATION UNION, Plaintiff,**

v.

**SPRINGFIELD TERMINAL CO., Defendant,**

v.

**M.G. MALOOF, Joined Counterclaim Defendant.**

Civ. No. 87–342–P–C.

United States District Court, D. Maine.

Nov. 30, 1994.

---

Clinton J. Miller, III, Cleveland, OH, Craig J. Rancourt, Biddeford, ME, for United Trans. Union and M.G. Maloof.

Susanni Douville, Charles Einsiedler, Jr., Pierce Atwood, Portland, ME, John H. Broadley, Jenner & Block, Washington, DC, Ernest J. Babcock, Friedman & Babcock, Portland, ME, for Springfield Terminal Ry. Co.

*MEMORANDUM AND ORDER GRANTING PLAINTIFF UNITED TRANSPORTATION UNION AND COUNTERCLAIM DEFENDANT MALOOF'S MOTION FOR SUMMARY JUDGMENT AS TO ST'S AMENDED COUNTERCLAIM AND DENYING DEFENDANT SPRINGFIELD TERMINAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO ITS AMENDED COUNTERCLAIM*

GENE CARTER, Chief Judge.

This case arises from a work stoppage initiated by the United Transportation Union

("UTU") against the Springfield Terminal Company ("ST") in 1987 and 1988. This case and another arising from the same series of incidents, *Springfield Terminal v. United Transportation Union,* Civil No. 88–117–P–C, have already resulted in numerous decisions by this Court. In these proceedings ST, as Counterclaim Plaintiff, seeks monetary damages from UTU and UTU's General Chairman, M.G. Maloof ("Maloof"), for alleged violations of the Railway Labor Act ("RLA"), 45 U.S.C. § 152; the Federal Railroad Safety Act ("FRSA"), 45 U.S.C. § 441(b); and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. The Court now has before it cross motions for summary judgment. UTU and Maloof seek summary judgment on all remaining counts of the Amended Counterclaim (Docket No. 51). Defendant ST seeks partial summary judgment on three counts of its amended counterclaim: Count I (violation of RLA for engaging in job action under guise of a safety withdrawal); Count III (violation of RLA and a labor agreement by failing to exert every reasonable effort to resolve the seniority dispute to avoid interruption in commerce); and Count IV (violation of RLA and contravention of the FRSA by encouraging and authorizing employees to withdraw from service even though such employees were not subject to hazardous conditions) (Docket No. 54).

The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510;] *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

*Brennan v. Hendrigan,* 888 F.2d 189, 191–92 (1st Cir.1989). The facts of this complex case are simple and essentially undisputed.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On November 12, 1987, UTU authorized all UTU members employed by ST to withdraw from service and to picket all ST locations. UTU claims that the withdrawal from service was prompted by a "hazardous condition" as defined by the FRSA. 45 U.S.C. § 441(b)(1)(B). Most of the UTU's members withdrew from service on ST. On November 13, 1987, ST President David A. Fink wrote to UTU President Fred A. Hardin, informing Hardin that, since ST had not received specific notice of the reason for the work stoppage, it had concluded that those individuals failing to report for work had voluntarily resigned from their positions. Soon after, ST announced publicly that individuals failing to report for work would be regarded as voluntary resignees, and if any of these resignees returned to work, ST would consider them to be "new hires" in terms of pay and seniority status. Although there was no dis-

pute that the alleged hazardous condition no longer existed as of December 8, 1987, the picket lines were not taken down until the following June. After December 8, the focus of the parties' dispute was the alleged retaliation by ST against the striking workers by reducing their pay and eliminating their seniority status.

On November 24, 1987 UTU filed a Complaint seeking declaratory, preliminary, and permanent injunctive relief under the RLA and FRSA (Docket No. 5),[1] to enjoin ST from proceeding with the alleged discrimination against the striking employees. ST filed an Answer and Counterclaim on December 2, 1987 (Docket No. 6) and an Amended Answer and Counterclaim on December 21, 1987 (Docket No. 10). On December 28, 1987, this Court denied UTU's motion for preliminary injunctive relief on the basis that the Federal Railroad Administration had conducted on-site inspections to assess UTU's allegations regarding unsafe conditions on ST and that the National Railroad Adjustment Board ("NRAB") had the exclusive factfinding authority to award backpay to aggrieved UTU members if ST's recategorization and reduction in pay constituted retaliation. *United Transportation Union v. Springfield Terminal Co.,* 675 F.Supp. 683 (D.Me.1987). The UTU sought relief through arbitration following this denial, and Public Law Board 4462 (Procedural) was established to address the union's claims. The following April, Public Law Board 4462 (Merits) found that the work stoppage was protected under section 10 of the FRSA, 45 U.S.C. § 441(b), and that ST's policy of treating the striking employees as resignees was impermissible discrimination. The decision ordered the reinstatement of the employees with all seniority rights as well as an award for backpay for the period of the work stoppage. ST brought an action in this Court for relief from the Public Law Board decision. *Springfield T.R. Company v. United Trans-portation Union,* 767 F.Supp. 333. This Court, on June 26, 1991, set aside the award and remanded the matter to Public Law Board 4462 (Merits) to resolve the dispute under the correct legal standard, *Springfield T.R. Company v. United Transportation Union,* 767 F.Supp. 333, 347 (D.Me.1991), where it has remained since the Court's decision.

In July 1988, UTU sought dismissal of its Complaint in this case since its claims for declaratory and injunctive relief were rendered moot by the arbitration award. The motion to dismiss was granted (Docket No. 22) and, therefore, only ST's Amended Counterclaim remains in these proceedings. On December 18, 1991, this Court imposed a stay on the proceedings in this case to await the outcome of the agency proceedings in Civil No. 88–117–P–C (Docket No. 38). The docket remained idle for well over two years, except for status reports from the parties indicating that no action had been taken by the National Mediation Board ("NMB") or any other administrative body. Finally, in April 1994, after conference with counsel, this Court vacated the stay, since there was no indication that the NMB had or would act on the pending arbitration, and further ordered the parties to file motions regarding jurisdiction and the other contested substantive issues in this matter (Docket No. 44). Interestingly, the parties received notification the following week to the effect that the NMB was finally acting on the arbitration award. After a subsequent conference of counsel on May 25, this Court amended its April 5 Order to continue the stay only with respect to the issues remaining in arbitration before the NMB (*i.e.,* the actions of ST in terminating the striking employees) and instructed the parties to file cross motions for summary judgment on the Amended Counterclaim in this case, now consisting only of the RLA, FRSA, and RICO claims. (Docket No. 47).[2]

1. The first Complaint, filed by UTU on November 20, 1987, was struck by this court for failure by counsel to sign the Complaint in accordance with Federal Rule of Civil Procedure 11.

2. UTU and Maloof raise the issue of whether this Court may properly exercise jurisdiction over the RLA and RICO issues while the companion case remains in arbitration. The Court was surprised to encounter that argument in UTU's memorandum of law since the minutes of the May 25, 1994, conference of counsel indicate that the parties did not dispute the jurisdiction of this Court to address the remaining claims in the Amended Counterclaim. Accordingly, this Court will dispose of these matters on their merits.

## II. DISCUSSION

### A. DAMAGES UNDER THE RAILWAY LABOR ACT AND THE FEDERAL RAILROAD SAFETY ACT

■ ST seeks damages against UTU and Maloof for violation of section 152 of the RLA by encouraging a work stoppage under the guise of a safety withdrawal and for failing to "exert every reasonable effort to avoid any interruption to commerce or to the operation of ST." Amended Counterclaim at ¶¶ 52, 58 (Docket No. 10). ST further alleges that the safety withdrawal by UTU was not protected by section 441(b) of FRSA since employees allegedly were not subjected to hazardous conditions creating an imminent danger of death or bodily injury. Amended Counterclaim at ¶ 66. If the allegations contained in the Complaint are true, there is little question that ST could seek injunctive relief from an ongoing withdrawal from service by UTU. *See, e.g., Boston and Maine Corp. v. Lenfest*, 799 F.2d 795, 802 (1st Cir. 1986), *cert. denied*, 479 U.S. 1102, 107 S.Ct. 1333, 94 L.Ed.2d 184 (1987). The question presented here, however, is whether the railroad can recover monetary damages against the union for harm caused by a purportedly illegal strike. This Court is persuaded that it may not.

Since the passage of the RLA in 1926, courts have not permitted railroads to seek monetary damages against unions for illegal work stoppages. Although the United States Supreme Court has recognized private causes of action under the RLA, *Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co.*, 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957), it has never ruled on whether such an action can lead to a recovery for damages against a union. The year following the Court's decision in *Chicago River*, however, the United States Court of Appeals for the Fifth Circuit concluded that a railroad could not recover

damages against its employees for a three-day strike over a minor dispute in violation of the RLA. *Louisville & N.R. Co. v. Brown*, 252 F.2d 149, 155 (5th Cir.), *cert. denied*, 356 U.S. 949, 78 S.Ct. 913, 2 L.Ed.2d 843 (1958). The Fifth Circuit Court recently restated the holding of *Brown* in an action against a union. *Burlington N.R. Co. v. Brotherhood of Maintenance of Way Employes*, 961 F.2d 86 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993). *See also, National Airlines, Inc. v. Airline Pilots Ass'n Int'l*, 431 F.Supp. 53 (S.D.Fla.1976).

ST argues, however, that the state of the law has changed with the Supreme Court's decision in *Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In *Franklin*, the Supreme Court addressed which remedies are available for implied rights of action under federal law. The Court held, "[A]lthough we examine the text and history of a statute to determine whether Congress intended to create a right of action, ... we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.*, 503 U.S. at ——, 112 S.Ct. at 1033 at 217. The implication of that holding here, according to ST, is that since there is unquestionably a private cause of action under the RLA, and Congress has not expressly limited the remedies available, *Franklin* requires this Court to presume that monetary damages may be recovered by ST.

■ The United States Court of Appeals for the Sixth Circuit has addressed this precise issue regarding the status of monetary damages under the RLA in the post-*Franklin* era. *CSX Transportation, Inc. v. Marquar*, 980 F.2d 359 (6th Cir.1992). This Court finds the reasoning of the majority in *Marquar* to be persuasive and adopts it here. In *Marquar*, the damages were sought by an employer against a union for failing to resolve the "minor dispute" [3] through appropri-

---

3. Disputes under the Railway Labor Act ("RLA") are divided into "major" and "minor" disputes. The terms are not used in the statute itself but were first articulated by the United States Supreme Court in *Elgin, J. & E.R. Co. v. Burley*, 327 U.S. 661, 665, 66 S.Ct. 721, 723, 90 L.Ed. 928 (1946). The Court subsequently explained that a

"major dispute" is "one arising out of the formation or change of collective agreements covering rates of pay, rules, or working conditions," whereas a "minor dispute" is one "arising out of the interpretation or application of collective agreements." *Detroit & T.S.L.R. Co. v. United Transportation Union*, 396 U.S. 142, 145–46 n. 7–

ate administrative channels and instead calling an illegal strike. The Sixth Circuit observed that the existence of a private right of action under the RLA was well-settled by the Supreme Court in *Chicago River*. *Marquar*, 980 F.2d at 363. Additionally, there was no affirmative statement by Congress that any particular rights were unavailable under the RLA.[4] Accordingly, the court found that monetary damages are "available" under the RLA. *Id.* at 365.

The Sixth Circuit's analysis, however, did not end there. Since the Supreme Court in *Franklin* stated that courts must presume the availability of all "appropriate" remedies, the *Marquar* majority then determined whether such remedies were appropriate in a minor dispute under the RLA. The court concluded that Congress intended the remedies under the RLA to be developed by courts on a case-by-case basis. *Marquar*, 980 F.2d at 379. The courts' response was to allow injunctive relief against carriers and unions, and to allow the recovery of certain monetary damages or backpay from unions or employers by individual employees, but to deny the use of the RLA to allow companies to recover monetary damages from unions or employees. *Id.* at 380 ("[T]he courts have not permitted the railroads and unions to use the club of damages against each other.").[5]

Therefore, the *Marquar* court concluded, the "common law" of the RLA developed by the courts does not permit damage awards such as those sought in that case. This is so, it reasoned, because courts have considered the "remedial scheme that will best effectuate the purposes of the Railway Labor Act, recognizing that the overarching legislative goal is to facilitate collective bargaining and to achieve industrial peace." *Id.* (quoting *International Brotherhood of Elec. Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979)). The court concluded that that goal would not be served by allowing damages awards to "threaten the delicate balance intended by the RLA." *Marquar*, 980 F.2d at 380. The court was concerned

---

8, 90 S.Ct. 294, 296–97 n. 7–8, 24 L.Ed.2d 325 (1969).

The classification of a dispute is relevant to how the parties may seek resolution of the dispute under the RLA. In the event of a major dispute, the parties are required by the RLA to undergo extensive mediation and bargaining before resorting to "self-help." 45 U.S.C. § 156; *Conrail v. Railway Labor Executives Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989). Minor disputes, on the other hand, are subject to binding arbitration before the National Railroad Adjustment Board, which has exclusive jurisdiction over such disputes. 45 U.S.C. § 153. There is very limited judicial review available as to the results of such arbitration but courts may enjoin strikes arising out of minor disputes, *Conrail*, 491 U.S. at 304, 109 S.Ct. at 2481, or major disputes where the employer has made a unilateral change in working conditions, *Burlington N.R.R. Co. v. Brotherhood of Maintenance of Way Engineers*, 961 F.2d 86, 87 n. 3 (5th Cir.1992).

ST contends that the dispute here is simply over seniority and is, therefore, a "classic minor dispute." Memorandum of Law at 12. The initial walkout, however, was allegedly due to hazardous safety violations and, therefore, is an action protected under FRSA. The First Circuit held in *Boston and Maine Corp. v. Lenfest*, 799 F.2d 795 (1st Cir.1986), *cert. denied*, 479 U.S. 1102, 107 S.Ct. 1333, 94 L.Ed.2d 184 (1987), that the intent of drafters of the FRSA was that all disputes under the FRSA, although technically not "minor disputes" under the RLA, be submitted to arbitration before the National Railroad Adjustment Board under 45 U.S.C. § 153. *Lenfest*, 799 F.2d at 801–02. *See* 45 U.S.C. § 441(c). UTU has not made any argument regarding the specific characterization of the dispute, but cites to case law involving minor disputes. Accordingly, this Court will consider the dispute here to be minor for the purposes of the present motion.

4. Although *Franklin* instructs Courts not to consider Congress's silence on the availability of remedies to be the required contrary indication that such remedies are unavailable, *Franklin*, 503 U.S. at ——, 112 S.Ct. at 1035, 117 L.Ed.2d at 220, the fact remains that Congress has amended the RLA in the years since the Fifth Circuit's decision in *Brown*, yet has never acted to restore any monetary remedies. *Marquar*, 980 F.2d at 364.

5. The *Marquar* majority did, however, acknowledge that there was an unpublished decision of the United States District Court for the District of Colorado, later reversed on other grounds, which awarded damages to a carrier. On remand, the damages were not reinstated. *Marquar*, 980 F.2d at 381 n. 4 (referring to *Denver & Rio Grande W. R.R. v. Brotherhood of R.R. Trainmen*, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (D.Colo.1967), *rev'd on other grounds*, 367 F.2d 137 (10th Cir.1966), *rev'd*, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967) (reversing without reference to the appropriateness of the damages recovery)).

that damages could be used as an unfair weapon to keep unions and employees "in line." *Id.* at 381 (quoting *National Airlines, Inc. v. Airline Pilots Ass'n Int'l,* 431 F.Supp. 53 (S.D.Fla.1976)). Therefore, the court was loath to change the scheme of remedies that had been consistent for the past sixty-six years. The Court is shown no reason, and can perceive none, why the need for monetary damages is more compelling today, especially in the circumstances of this case than it was half a century ago. If such a change in policy is to be made, it should be done by Congress. *Id.* at 382 ("[I]t is for Congress, and not the Courts, to strike the balance 'between the uncontrolled power of management and labor to further their respective interests.'") (quoting *Burlington N.R.R. Co. v. Brotherhood of Maintenance Way Employes,* 481 U.S. 429, 452–53, 107 S.Ct. 1841, 1854–55, 95 L.Ed.2d 381 (1987)).[6]

■ This Court can add little to the *Marquar* court's analysis and is persuaded by both its reasoning and result. To allow ST to seek damages against a union for its actions on behalf of employees would create a radical shift in power in labor disputes. If such a shift is made, it should be initiated by Congress with the full opportunity allowed through the legislative process for a considered and thoughtful analysis of the policy implications of permitting the recovery of such damages. Accordingly, this Court concludes that, while monetary damages are not precluded by the RLA, they are not an appropriate remedy to be allowed from the simple fact that a private cause of action under the RLA is cognizable.[7]

### B. RICO ALLEGATIONS

■ ST also seeks relief under RICO for extortion and mail fraud arising from the 1987 withdrawal of services. UTU and Maloof contend, however, that ST's pleadings on this count are insufficient as a matter of law. This Court agrees and grants summary judgment for UTU and Maloof on that count as well.[8]

ST's Complaint falls short since it fails to indicate which subsection(s) of the RICO pro-

---

6. The Court *notes* that a similar result was reached by the District Court for the Eastern District of Pennsylvania in *Piedmont Airlines v. Air Line Pilots Ass'n,* 863 F.Supp. 212 (E.D.Pa. 1994). The Court may not *cite* such a case under this Circuit's general rule prohibiting citation of unpublished cases. *Bachelder v. Communications Satellite Corp.,* 837 F.2d 519, 523 n. 5 (1st Cir.1988). The Court nonetheless draws comfort from the fact that the court in *Piedmont Airlines* reached the same decision as does this Court in this case.

7. The Court also rejects ST's alternative argument that, since the RLA permits "equitable" monetary awards (*i.e.,* backpay), there is authority for the ST to be "made whole" through a monetary award under equitable principles. To allow such an award in light of the decided case law against damages awards is to make a distinction without a difference. The recovery of backpay by individual employees, or unions acting on behalf of individual employees, *see, e.g., Railway Labor Executives Ass'n v. Boston and Maine Corporation,* 639 F.Supp. 1092, 110 (D.Me.1986), is a wholly different remedy from that for the alleged expenditures of a carrier arising from a strike by its employees. ST seeks damages in the legal sense and such recharacterization does not change the essence of what is being sought.

The Fifth Circuit faced a similar alternative argument in *Burlington N.R.R. Co.* 961 F.2d at 89, and concluded:

Nor do we find that the holding of *Brown* is limited to a situation in which the plaintiff classifies the damages as a legal remedy as opposed to an equitable remedy. Regardless of the label attached to the damages sought, the nature of the relief sought in this case is identical with that sought in *Brown*—the railroad wants to recover the money it expended as a result of the illegal strike.

*Id.* (footnote omitted).

8. UTU and Maloof's motion, although characterized as a motion for summary judgment under Rule 56, is essentially a motion for failure to state a claim under Rule 12(b)(6). The label of "motion to dismiss" is more appropriate since it is being sought exclusively on the pleadings and without reference to extrapleading material such as affidavits. *See, Aldahonda–Rivera v. Parke Davis Co.,* 882 F.2d 590, 591·(1st Cir.1989) ("[A] Rule 12(b)(6) motion to dismiss can be transformed by the court into a motion for summary judgment under Rule 56 (and vice versa)."; Charles A. Wright, *et al., Federal Practice and Procedure* § 2713 at 594 (2d ed. 1983) ("[A] summary judgment motion may be made on the basis of the pleadings alone, and if this is done it functionally is the same as a motion to dismiss for failure to state a claim or for a judgment on the pleadings.") (footnotes omitted).

Accordingly, the role of the Court is to determine whether ST has adequately stated a claim for relief under RICO, not whether there is a genuine issue of material fact in dispute.

vision outlining prohibited practices Maloof allegedly violated. 18 U.S.C. § 1962. The general labels of "extortion" and "mail fraud" do nothing to assist the Court in understanding precisely how the statute was violated. The United States Court of Appeals for the Seventh Circuit has held that spelling out which subsection of section 1962 defendant allegedly violated is "essential" in pleading a RICO claim. *Reynolds v. East Dyer Development Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989). Each subsection prohibits different activities and, more important, "the different RICO sections require plaintiffs to prove different things." *Id.* Without knowing the specific violations alleged here, it is impossible for the Court to determine whether ST has adequately stated a claim for relief. *See also, Cutler v. Federal Deposit Insurance Corp.*, 781 F.Supp. 816, 820 (D.Me.1992) (stating, in *dictum*, that plaintiff did not show a RICO violation under section 1962 as a result of his failure to state which subsection(s) defendant allegedly violated).

 The result of this insufficiency of pleading is that ST's RICO claim must be dismissed. Although in certain instances, it may be appropriate for a court to allow discovery and subsequent amendment, *Becher*, 829 F.2d at 289, such is not the case here. This counterclaim was filed nearly seven years ago; there has been sufficient discovery by the parties in this protracted litigation. Allowing time for additional discovery is not necessary when it does not appear that a lack of specific information was the basis for the inadequate pleading. *See Miller Hydro Group v. Popovich*, 793 F.Supp. 24, 28 (D.Me.1992). Moreover, prior to the filing of initial pleadings here, at least three decisions in other federal district courts found that RICO claims were inadequate for failure to state which subsection of section 1962 was violated. *Washington v. Baenziger*, 656 F.Supp. 1176, 1178 (N.D.Cal.1987); *Antilles Trading Co., S.A. v. Scientific–Atlanta, Inc.*, 117 F.R.D. 447, 451 (N.D.Ga.1986); *National Semiconducter Corp. v. Sporck*, 612 F.Supp. 1316, 1325 (N.D.Cal.1985).[9] Accordingly, ST's RICO claims here cannot survive summary judgment.

## III. CONCLUSION

Accordingly, UTU and Maloof's Motion for Summary Judgment is *GRANTED* and ST's Motion for Partial Summary Judgment is *DENIED.*

So *ORDERED.*

---

9. UTU and Maloof sought summary judgment on the RICO count on the basis of Federal Rule of Civil Procedure 9(b), which requires, *inter alia*, that allegations of fraud be pleaded with particularity. Portions of the RICO claim, however, appear to be based upon allegations of extortion as well as mail fraud. It is unclear whether these Rule 9(b) particularity requirements, which unquestionably apply to RICO mail and wire fraud claims, *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir.1987), also apply to extortion and other nonfraud allegations under RICO. The one court which has addressed this issue, albeit in *dictum*, concluded that "allegations of extortion [under RICO] need not be pleaded with particularity." *Turkish v. Kasenetz*, 832 F.Supp. 565, 572 (S.D.N.Y.1993).

The applicability of Rule 9(b) to the pleadings herein are irrelevant to the inadequacy of the pleadings here. In the four cases cited above that required the pleading of the specific subsection of section 1962, none appeared to rely directly on Rule 9(b), and two clearly relied on Rule 12(b)(6). *Washington*, 656 F.Supp. at 1178; *National Semiconductor Corp*, 612 F.Supp. at 1325. Since this Court has already determined that this motion is essentially one under 12(b)(6), it is proceeding exclusively under that rule.